This is Frida Kahlo Corporation v. Pinedo, case number 24-10293. Mara Romeo Pinedo Good morning, counsel, whenever you're ready. Mara Romeo Pinedo Good morning, and may it please the court. Christina Alonso on behalf of the plaintiff's appellants, Frida Kahlo Corporation, which we refer to as FKC in the briefing, as well as Frida Kahlo Investments S.A. This case deals with personal jurisdiction. The court granted the defendant's motion to dismiss for lack of specific personal jurisdiction, and there are two issues. The first issue is whether the court erred when it found that although it had personal jurisdiction under Florida's long-arm statute as to Familia Kahlo, it did not have jurisdiction as to Ms. Pinedo under Florida's corporate shield doctrine, and as well as the trial court's error with regards to the finding that exercising jurisdiction over both defendants would violate the due process clause of the U.S. Constitution. And the claims that are at issue in this case is tortious interference with a business relationship, the business relationship between plaintiffs and their licensees with regards to the use of the image, name, and likeness of Frida Kahlo, in particular with regards to art exhibitions, immersive exhibitions, as well as cell phones. But the tort that was committed was the communication, the cease and desist letter. Yes, that is what the tort. And under Florida law, any kind of communication, whether an email, can be considered a tort if it's sent to Florida. Correct, Your Honor. And that is precisely why the district court found that it had jurisdiction under the long-arm  For Familia Kahlo. Can you talk a little bit about the corporate shield doctrine then? Yes, Your Honor. The corporate shield doctrine does not apply to intentional torts. And really, the defendant's argument that it doesn't apply is grounded on the letters themselves. They argue that the letters were not sent on behalf of Ms. Pinheiro, while we argue that, yes, based on the plain language of the letters. What's the best case for the proposition that the corporate shield doctrine doesn't apply to intentional torts? Sure. I would say that the best case in that regard is the Louis Vuitton case from this court that specifically says it does not apply to intentional torts in Florida, as well as the Florida Supreme Court case in KITROSER. That's K-I-T-R-O-S-E-R. And both of those cases make clear that there, of course, is jurisdiction. And the corporate shield doctrine does not protect an officer or an owner where they commit the tort in the state. Do we need to get there? Because I thought the primary argument you were making, you may make other arguments, but I thought the primary argument you were making was that under the burden-shifting framework for personal jurisdiction, you've alleged that this was done individually by Ms. Pinheiro, that they've come forward with an affidavit which essentially says, I've done nothing in Florida, and you have proffered the letter, which seems, for Mr. Duran, which seems to indicate that Mr. Duran represented both the corporate entity and the heirs individually and joined inseverably in seeking damages and relief, and one of the heirs here being, of course, Ms. Pinheiro. Yes, precisely, Your Honor. In other words, if that were the case, the corporate shield doctrine wouldn't even apply, right? I mean, it would apply to her and her activities as a member of the corporation, but it wouldn't apply to her individually, her individual activities, would it? It would not apply to her and her individual activities, and that's really the premise of our argument, and that's the allegation in the complaint that they really haven't controverted through their affidavits, either Mr. Duran's affidavit or Mrs. Pinheiro's affidavit. Even if they have, let's assume they have. I think it's a close call. I mean, a general sort of denial, I didn't do anything, may qualify, but where you then put evidence forward and there's a conflict, as I understand it, where there isn't an evidentiary hearing, the conflict is in your favor as the plaintiff, right? Right. All the allegations are viewed in the light most favorable to the plaintiff, and those allegations are that the letters were sent on her individual behalf. Not even the allegations, but where there's a conflict between an affidavit and other evidence, where the district court doesn't hold an evidentiary hearing and make findings, it simply relies on the cold record. If there's a conflict in evidence, that conflict enters to your favor, does it not? Yes, and the plain language of the letters provide that the letters were sent on her behalf. Well, for the corporation and on her behalf individually for the heirs. Yes, Your Honor. Can you then address the district court's ruling on the due process requirement? Because let's assume that, at least from my part, that Ms. Pinedo has, that you satisfy the requirement for Florida's long-arm statute. Can you address the due process requirements? Sure. The district court found that the due process requirement of minimum contacts was not met because the cease and desist letters are simply not enough. It's not a sufficient contact. And just to remind, is that what about the letters? Because it seems, is it informational? Is it a serious threat of suit? Can you contextualize the letters? Sure, and that's really the key here, is that these cease and desist letters don't simply alert the recipient that the defendants have certain rights. They go beyond that. They assert that they have rights that are being violated, and they ask the recipient to cease their business with the Frida Kahlo Corporation and their use of the images and the name of Frida Kahlo. Does that make a difference under the case law as you understand it, that if it is the informational kind that a cease and desist letter may not meet the due process requirements or the minimum contact requirements, but if it is of the kind of sent to a third party threatening litigation and damages, that that is a more assertive interference and sort of crosses over into not just an assertion of rights but actual activity being conducted in the forum? Yes, Your Honor, and that's what's happening here because they're threatening joint litigation against the recipients of the letters. They're asking for them to respond within seven days and to say that they're going to be ceasing their activities if not this litigation will ensue against them. And so there is this threat of litigation, and beyond that those— What, in fact, happened as a result? Well, the licensees reached out to the plaintiffs with regards to the uncertainty of whether they could proceed with the exhibitions, one of those exhibitions being here in Miami. At the exhibitions, the cell phone covers are sold. That's one of the licensees. Casley puts together the cell phones and covers and sells those. Is there any allegation that anyone withdrew as a result of the letters? There's not a specific allegation of withdrawal. There's an allegation that there was a damage to the relationship and to the plaintiffs, but there's not any more particularized allegation with regards to damage. The district court only ruled on the second part of the due— because the due process test has three separate parts. It has the arise and related to part, it has the purposeful availment part, and then the fair play part. I'll call it the fair play part. The district court only ruled on that second one, right? Yes, only asked to minimum context. Did not reach the issue of related, whether the contact was related, which we would say it is, of course, related, because the letters were sent into Florida. It didn't reach the fair play issue, right? No, it did not reach the fair play. Let's say we agree with you that the district court either was wrong in the minimum context or at least should have analyzed the effects test, because this is an intentional tort under the effects test that meets the purposeful availment prong. Let's assume that for the moment. Should we just reverse and allow the district court then to do the rest of it, or should we go ahead and do the rest of the due process test ourselves? I think the court should do the rest of the due process test itself, and I think that would be consistent with other decisions from this court where the district court only reaches one of the prongs but not all of the prongs, and it can make a decision based on the record. The district court's decision was based on the filings themselves, like Your Honor said, not an evidentiary hearing, and based on what was filed by the defendants, they didn't make the necessary showing that would be their burden, and here in particular, Florida has an interest in deciding a dispute where there's an intentional tort committed in the state, and the U.S. has an interest in deciding a dispute with regards to U.S. trademarks, which only a federal court could do in this country. And then the last remaining point is that the court should have really taken a look at Rule 4K2 in making its analysis of sufficient contacts, because under Rule 4K2, it was allowed to look beyond just contacts with Florida and really at defendants' contacts with other states as well, which further support the fair exercise of jurisdiction in this case. Thank you, Counsel. Thank you. Thank you. Good morning, Your Honor. May it please the court. My name is Joan Andrea Limon, and I represent a police in this case, Familia Calo S.A. and Mara Cristina Teresa Romeo Pinedo. We respectfully ask this court to affirm the district court decision dismissing the First Amendment complaint for lack of personal jurisdiction for the following reasons. First, there is no personal jurisdiction over an individual defendant. So let's talk about the long-arm statute with regard to Ms. Pinedo, okay? So as I understand it, the way our law works is this. It's a three-part test. First, we look at the allegations of the complaint, and if they show that it meets one of the long-arm statutes, then you can controvert that with affidavits and other evidence. You've done that here. And then there's an opportunity for the plaintiff to then come back with some evidence. And if there's a conflict in that evidence, we look at that in the light most favorable to the plaintiff. If there's not, then we favor the evidence, right? Is that as you understand the test? Yes, Your Honor. Okay, so here, as I understand it, they've alleged that Ms. Pinedo sent the letter in her individual capacity. You controverted that with an affidavit where Ms. Pinedo said, I haven't done anything in Florida ever, and I'm paraphrasing, of course. And then they come back and say, well, if you look at the letter, the letter seems to indicate that it's on behalf of the corporate. Mr. Duran is writing it on behalf of the corporation and the heirs, which includes Ms. Pinedo, seeks damages on behalf of the heirs, including Ms. Pinedo, says that he represents the heirs and the corporation and the heirs being Ms. Pinedo. Why is that not an indication, at least, for controverting evidence, that the letter, in fact, was done in her individual capacity? Yes, Your Honor. So the clear language of the letter does not indicate that the letter was sent on behalf of Ms. Pinedo. In fact, the letter just informs. But the letter says, we would also like to point out to you that in our capacity, as representative of Mrs. Maria Cristina Teresa Romeo Menedo. Yes, Your Honor. How is that not individually? If you continue reading, they inform the recipient that a lawsuit has been filed in Spain. So our argument is that they were representing Mrs. Pinedo only in that capacity. Familia Calo does not have a general power of attorney. So you're saying that part, that clause in the letter, was just informational? Those two instances, yes, they were informational only, Your Honor. But even assuming. But what about the, we would like to inform you that our representative, the heiress of the painter Frida Calo. And Ms. Pinedo is one of the heiresses, correct? Yes, Your Honor. And if you continue reading, it says we have filed before the Panamanian jurisdiction some precautionary measures against Frida Calo Corporation. So they're just pointing out two instances where the company has acted on behalf of Mrs. Pinedo. Why would that not be a reasonable, why wouldn't it be a reasonable interpretation or inference that these letters, both of them, are also on behalf of her, given that you point to the lawsuit in which she is being individually represented? Yes, Your Honor. Again, the clear language of both letters state that they're informing the recipient that some actions have been taken on behalf of Ms. Pinedo, but they do not indicate that they have a general power of attorney. And also in the affidavit submitted by Mr. Gallagher. And do you have to have a general power of attorney when you're sending a letter on behalf of, I mean, if you have an individual, this is the general manager of Familia Calo. So the assumption is that you're sending this letter if you're referencing that you are representing the heiress of the painter Frida Calo. You have, I've never seen a letter where you attach a power of attorney. Yes, Your Honor. And that may be correct, but this letter is signed by the general manager. And if you read at the end, general manager of Familia Calo. It doesn't say general manager and representative of Mrs. Pinedo. So I think that there is... I guess the question is though, why, you may be right ultimately after a full evidentiary hearing, but for purposes of the burden shifting framework, why is this not at least some evidence to suggest that this was done in an individual, sent through the agent of the individual, such that it creates a conflict of evidence in favor of the plaintiff? Now, it may be that that means the district court needs to hold an evidentiary hearing and hear from everyone and make a finding about that. But how is this at least not some evidence to support exactly what the plaintiff is saying here? Well, Your Honor, even if it constitutes some evidence, Mrs. Pinedo is protected by the corporate shield doctrine. But if it's through individual capacity, she's not. In other words, you're right that if this was sent just by the corporation, she would be with one caveat that I'll get to in a second. But if it's sent by the corporation, her being an officer, and her individually, the corporate shield doctrine doesn't protect her then, does it? Well, if that were the case, yes, she wouldn't be protected. Okay, here's the caveat. So I asked your opposing counsel this, her best case, and her best case is Louis Vuitton. And Louis Vuitton says, importantly, however, under Florida law, this corporate shield doctrine, the one we've been talking about, is inapplicable where the corporate officer commits intentional torts. So if the allegation here is that, again, assuming this was just sent in a representative capacity and that the corporate officer committed an intentional tort, which is both Lanham Act and the tortious interference is, why then does the corporate shield doctrine apply? Yes, Your Honor. So for the corporate shield not to be applicable, the corporate officer needs to be a primary participant, and there needs to be a personal benefit. That means that the officer was a primary participant and the corporate officer also derived a personal benefit from the wrongful activity. That's under Florida Supreme Court case, Doe v. Stansom. I know, but if there's a categorical exception for intentional torts, we don't even get to that question. You're right that that is, if it applies, here's how you overcome it. But this is, it doesn't even apply according to what Louis Vuitton says. The corporate shield doctrine wouldn't apply? I just asked you. Well, because the cease and desist letter is by definition a tort. Yes, correct, Your Honor. So it would be an intentional tort. Yes, correct. So if that were the case, yes, it would be under the Florida long-arm statute, it would be an intentional tort. Okay, so let's get past the long-arm statute and then let's go to the due process clause. So the district court ruled on one ground. It only ruled on the purposeful availment and specifically on the minimum context test. My first question is, I understand the law where there's an intentional tort. The Supreme Court has essentially set two separate tests to look at for purposeful availment. One is minimum context, which the district court undertook, but the other is an effects test, right? Yes, correct, Your Honor. Okay, and the district court, you agree with me, the district court did not undertake an effects test? That's correct, Your Honor. Okay, so as I understand the effects test, a single tortious act can be an effect, right? There are three elements to the effects test, Your Honor. One of those is that a tort was committed. And a single one could be enough, right? Yes, and then actually I would like to point out a very recent decision from this court in Moore v. Cecil back in 2024 where the court analyzed the effects test over a tort. Well, I believe it was defamation. And there was a clarification that was done post Calder, which is the one that applies to effects test, where the Supreme Court in this court quoting the Supreme Court case, which is Walden v. Fjord, stated that, the Supreme Court clarified in Walden that a defendant's actions do not create sufficient context with the forum state simply because he allegedly directed his conduct at plaintiff, whom he knew he had connections. And then if we read Walden in Walden, the court stated that mere injury to a forum resident is not a sufficient connection. There's no doubt that that's true. Injury is not enough. The elements are, as you were about to state, the conduct has to be intentional. The tort has to be aimed at the forum state. So in other words, not just enough that you aimed it at a plaintiff. It has to be aimed at the state and cause harm that the defendant should have anticipated. Here it seems, correct me if I'm wrong, but as I understand the allegations and the record as we have it, at least one of the letters went to an art exhibit that was going to be taking place in Miami to a locally based company for a plaintiff that, while a foreign corporation, had its principal place of business in Florida. And so if a cease and desist letter is sent to it and to a company that's giving an exhibit here in Florida, how is that not clearly aimed at the forum state? Yes, Your Honor. In our brief, we cited multiple case law where it has been held that simply sending cease and desist letters aimed at the forum. And I think that case law is 100% right. And I think this gets to Judge Abudu's question, which is, the premise of the question is, is this just informational or is this something more? And the reason is because the case law that you're relying on from the federal circuit in particular has been, if you're just asserting your rights, there's no other way to do it, and so you don't make yourself into the forum by just asserting your rights. And I think that's logically correct. But if you are doing more than that, if you are saying, I'm asserting my rights, and by the way, if you do not comply, I am going to sue you, I am going to seek damages to you, you are going to be hauled into this litigation, which then causes business interference, that seems to be more, and both the federal circuit and a bunch of others have said that that is the point at which you are purposely availing yourself of the forum, right? Yes, and that's an important point that I actually wanted to convey. Here, the threat of litigation was in Spain. The letter – Does that matter? Yes, Your Honor, because – It's not just an assertion of rights though. That goes to the point where the defendant availed themselves, purposely availed themselves of the benefits and privileges of the laws of the forum state. Well, if you're sending a letter to stop doing business to somebody in the forum state, and if you don't, I'm going to haul you to all this litigation going on in two separate countries and two separate continents, that would seem to be availing yourself of the forum, is it not? Well, Your Honor, under several cases that I can – we cited those cases in our brief, I can quickly point those to you. The mere threat of litigation is not enough to purposely avail the defendant of the benefits and privileges of the forum. There has to be – What about telling them, if you don't stop sending this, you're going to owe damages to me? So let's say there wasn't a threat of litigation. That's more than just informing someone of your rights to the intellectual property, is it not? And that is not just litigation. That is, stop doing this and you're going to owe me money if you do. Perhaps, Your Honor, but we have to take into consideration other activities that defendant may have target to the forum. That by itself is not enough, and in this case – But I thought the – I thought the – our law on the effects test is, quote, a single tortious act can establish purposeful availment without regard to whether defendant had any other contacts with the forum state. That's from Louis Vuitton. Yes, Your Honor, but it was, as I mentioned briefly, it was clarified by Walden v. Fuhrer. Walden is an old Supreme Court case. I mean – And then by Moore v. Cecil, which states that, yes, if there is a tort, the first round of specific jurisdiction is met, but then you have to go to the due process analysis, which is the main issue here. Just because there was a tort and plaintiff suffered damages in the forum is not enough for the court to exercise jurisdiction over defendant. Let's assume for the moment that we disagree with you, or the district court, not you, the district court, on the purposeful availment prong. Do you – would you wish for us to get to the other two prongs, or do you wish for us to send it back to the district court for it to decide the other two? I would prefer for this court to decide the other two prongs, and if I may, as to whether it would be fair to exercise jurisdiction, well, we recognize that the Florida State may have an interest in adjudicating a tort that was committed in their forum. That still does not override the main issue here, which is due process and purposeful availment. It would be unfair to subject defendant to jurisdiction only because that defendant was simply asserting their rights, informing others of their rights, and the only connections to the forum is just simply sending cease and desist letters. Essentially, it would not be reasonable sending the cease and desist letters. Do not create a reasonable expectation to be held into court in that forum by itself. Even where that letter says stop doing the business that you're doing? Yes, Your Honor. Even if the letter says – there has to be more – there has to be target activity by the defendant, and I can give you examples of these commercial activities in the forum. I believe that there is case law. But you targeted – you asked someone to stop an exhibition that was scheduled to open in Miami, Florida. Is that not accurate? Well, Your Honor, the letters are very general. They were sent – What was the purpose of the letter? The purpose of the letter was to stop the exhibition happening in Miami. Well, Your Honor, the purpose of the letter is for the third parties to stop using the name of Frida Kahlo in relation to anything that they're doing. So you're saying the exhibitions could have continued in compliance with your request? I don't understand that part. I'm about to run out of time. Please answer the question.  So, Your Honor, yes, the exhibitions were supposed to happen not only in Miami but in New York and in Texas. We did ask them to stop, not with those exact same words, but they may have been the ultimate goal. But that, then again, it's not specifically being targeted to the forum. And the complaint alleges that those exhibitions were taking place in other states, not only in Florida. So, to my point, it doesn't show that we were specifically targeting Florida. And thank you. Thank you, counsel. And you have five minutes. Yes, Your Honor. This Court's recent decision in Moore v. Cecil doesn't change the effects test analysis. Defendants are focusing on that part of the decision citing Walden that really talks about targeting and directing communications at the forum state because there the court was addressing social media and website use. This case is different because here the letters are sent directly into Florida. So there's no question that the forum is targeted because letters are sent to licensees in Florida and defendants are well aware of that. Do you agree that if the letter was informational, which is, hey, we own these rights, we're making you aware that we own the intellectual property here, act accordingly, you agree that that would not be sufficient, right? Right, Your Honor. These are not just informational. I know they're not, but you would agree with me that if they were what I just described, that would not be sufficient purposeful availment, right? Yes, I agree. That if a cease and desist letter is merely informational, that would not be sufficient. That would indeed not even constitute a tort of, you know, tortious interference with a business relationship. But here that is specifically what's going on in these letters. They say that they're simply mentioning litigation in other countries, but they're threatening to bring them into litigation in other countries because of what they're doing in the U.S. If they ask for damages after, if you say you have seven days, if not, we're going to look for damages. Precisely, Your Honor. So, you know, that's a pretty big threat. And, of course, the exhibits could not go on if they're not engaging in the business of using the licenses of Frida Kahlo's name, image, and so forth. I mean, that's precisely what the art exhibitions are. And so there is a direct targeting by the defendants, the commission of an intentional tort by both of them into the state of Florida where they're purposefully availing themselves of the state of Florida and trying to stop this business relationship, all the while also knowing that the plaintiffs are based in Florida, located in Florida. And Ms. Pinheiro knows this because she's a former secretary of FKC, so she's well aware that plaintiffs' offices are based in Florida. And so there was this specific targeting into Florida, and so there is sufficient minimum contacts just by virtue of the intentional tort that's being committed in the state. And there is no violation of due process. It is fair, and it does comply with substantial justice for them to be hailed into court here. They should have anticipated that when they sent these letters interfering with the business relationship. We rest on our grief for the remainder of the arguments. Thank you. Thank you, counsel.